IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| AZANIAH BLANKUMSEE, | * | |
| Plaintiff | * | |
| v | * | Civil Action No. PWG-13-2658 |
| BOBBY SHEARIN, Warden | * | |
| GREG FLURY, P.A., | | |
| COLIN OTTEY, M.D., | * | |
| Defendants | *** | |

**MEMORANDUM OPINION**

Azaniah Blankumsee ("Blankumsee") is suing Bobby Shearin, former Warden of North Branch Correctional Institution ("NBCI"), Greg Flury, a physician's assistant and Colin Ottey, M.D., pursuant to 42 U.S.C. § 1983. (ECF No. 1). Defendants have filed motions to dismiss or, in the alternative for summary judgment with verified exhibits. (ECF No. 12, 17). Blankumsee opposes the motions with a cross motion for summary judgment. (ECF No. 20).[1] No hearing is needed to resolve the issues. *See* Local Rule 106.5 (D. Md. 2011).

I. **BACKGROUND**

A. **PLAINTIFF'S ALLEGATIONS**

Blankumsee, an inmate incarcerated at NBCI, alleges that he was provided constitutionally inadequate medical care for allergies and arthritic joint pain in August of 2013, and requests compensatory and punitive damages as well as declaratory relief. He presents the

---

[1] In addition to his cross- motion for summary judgment Blankumsee has filed declarations. (ECF No. 15, 19, 20 and 25). Blankumsee's submission of fellow inmate Lawrence E. Jackson, Jr.'s declaration (ECF No. 19) concerning Jackson's dissatisfaction with his own medical care is not germane to Blankumsee's treatment. Jackson may pursue his own claims by filing a separate complaint.

following allegations of fact:

On August 19, 2013, Blankumsee spoke with a nurse concerning renewal of his allergy medication, Benadryl. The Benadryl had been prescribed by Greg Flury for Blankumsee's allergy-related eye and ear irritation and difficulty breathing and was to expire on August 20, 2013. Compl. 2, ECF No. 1.[2] Additionally, Blankumsee told the nurse that his medication for joint arthritis pain was ineffective. According to Blankumsee, the nurse indicated the allergy medication would be renewed, took the pain medicine from him, and stated that a "stronger" pain medication would be prescribed for his pain. *Id.*[3]

The following day, August 20, 2013, Blankumsee awoke unable to breathe and with mucous in his eyes and ringing in his ears. *Id.* Blankumsee's right arm and left leg were numb from substantial arthritic pain. *Id.* Blankumsee states that his "cell buddy" helped remove the mucous from his eyes with a washcloth and hot water and assisted "with awaring both Bobby P. Shearin and medical officials, to include M.D. Ottey Colin and P.A. Greg Flury, through the administrative remedy procedure and sick call request forms, as Plaintiff could not write due to substantial pain in his right hand." *Id.* at 2–3; *see also* ECF No. 19. That same day, August 20, 2013, Blankumsee informed a nurse administering medications on his tier of his condition, who told him that only a physicians' assistant or medical doctor could prescribe the medication. Blankumsee claims that for the next ten days he went without medical treatment for his difficulty breathing and excruciating pain. ECF Nos. 15 and 19. Based on these allegations, Blankumsee

---

[2] All references to page numbers in record citations are to those generated by the court's electronic case filing system.

[3] William Beeman, RN, who evaluated Blankumsee on this date, is not named as a party defendant. For reasons discussed herein, even if he were a defendant, Beeman's actions do not show requisite deliberate indifference amounting to a violation of constitutional magnitude. *See infra*, pp. 6, 13-14.

2

claims defendants conspired to deprive him of medical treatment and acted with deliberate indifference to his medical needs. *Id.* at 3.

### B. DEFENDANTS' RESPONSE

#### 1. Warden Shearin

Defendant Bobby Shearin, Warden at NBCI at the time of the incidents alleged, asserts that he played no role in providing medical treatment to inmates, and requests dismissal of the claims against him or entry of summary judgment in his favor. Shearin Mot. to Dismiss, ECF No. 17. Defendants Colin Ottey, M.D. and Flury ("Medical Defendants," collectively) seek dismissal of the complaint or judgment in their favor on the grounds that Blankumsee alleges no specific facts to demonstrate they acted with intent to deprive him of needed allergy or pain medication in support of his constitutional claim. Medical Defs.' Mot. to Dismiss, ECF No. 12.

In support of his dispositive motion, Shearin has submitted a declaration in which he attests that medical care at NBCI is provided by employees of a private company, Wexford Health Sources, Inc., pursuant to a contract with the State of Maryland. Shearin Decl. ¶ 2, Shearin Mot. to Dismiss Ex. A, ECF No. 17-2. According to Shearin, correctional staff (including Shearin) make no decisions regarding the medical care provided to inmates, and he has no authority to direct medical staff employed by the private contractor to provide care to an inmate or to withhold care from an inmate. *Id.* Additionally, Shearin attests that he refers complaints (often in the form of requests for administrative remedy or an "ARP") to medical staff for investigation and response because he lacks the training and expertise required to evaluate a medical case. *Id.* ¶ 3. Shearin attests that he relies on the advice and analysis of medical staff if he responds directly to an inmate's medical complaint. Usually the inmate is advised to pursue his concerns with the medical provider. *Id.*

3

Shearin attests to having no recollection of receiving any communication from Blankumsee concerning medical complaints. He has reviewed his correspondence log and determined that it does not show any letters from Blankumsee either. *Id.*[4] Shearin also has attached to his declaration Blankumsee's Individual ARP Index Report, which shows an ARP with respect to medical conditions was submitted on June 10, 2013, but that no ARP respecting medical conditions was submitted in August 2013 or regarding the issues in Blankumsee's complaint. ARP Index Report, Shearin Decl. Ex., ECF No. 17-2. Shearin declares that had he received a letter or reviewed an ARP submitted by Blankumsee, he would have dealt with it as above described. *See id.*

### 2. Medical Defendants

The Medical Defendants' response includes 97 pages of Blankumsee's medical records[5] as well as Dr. Colin Ottey's affidavit. Blankumsee's medical records confirm his history of seasonal allergies and "arthalgic-like joint pain" for which he has been prescribed various medications including antihistamines, histamine blockers, anti-inflammatory gluco-corticoster-

---

[4] Blankumsee has provided a copy of his May 20, 2013, ARP concerning medical care for dry skin, pain in his right hand and left knee, and allergies and the response he received from Warden Shearin. (ECF No. 20, Ex. A, pp. 1–2, Plaintiff's Motion for Summary Judgment; *see infra* pp. 8-9). It is unclear why this ARP was not among the records found by Shearin.

[5] It is not clear to me why the Medical Defendants thought that Blankumsee's § 1983 complaint justified laying bare his medical history on the public docket, publishing ninety-seven pages of his medical records in their entirety without redacting or sealing any portion besides his date of birth, which is redacted from most, but not all, of the pages provided. Assuming that the Medical Defendants are covered entities, I cannot see how such a disclosure is permissible under the Health Insurance Portability and Accountability Act or the Health Information Technology for Economic and Clinical Health Act. *See* 45 C.F.R. § 164.512(e) (allowing for disclosures in judicial proceedings only under certain circumstances). However, because it is not readily apparent that the records provided by the Medical Defendants deal with deeply personal or irrelevant material, I will leave it to the parties to determine if they wish to seek to seal or redact those records. *Cf. Loud v. Stouffer*, No. PWG-13-1134, 2013 WL 6147816, at *2–3 (D. Md. Nov. 21, 2013).

oidal nasal solutions (for allergies), and non-steroidal anti-inflammatory medications (for arthritic pain). *See generally* Medical Records, Medical Defs.' Mot. to Dismiss Ex. 1, ECF No. 12-1; *see also* Ottey Decl. ¶ 5, Medical Defs.' Mot. to Dismiss Ex. 2, ECF No. 12-2. The relevant medical history is summarized as follows:

On May 20, 2013, Blankumsee saw Flury for seasonal allergies, including sneezing, rhinorrhea,[6] and excessive tearing and dry skin. At the time, Blankumsee had been using Flunisolide nasal spray and Chlor-trimeton. Medical Records 8–11, 83; Ottey Decl. ¶ 6. Blankumsee complained the Chlor-trimeton was not helping him. Medical Records 8–11; Ottey Decl. ¶ 7. At Blankumsee's request, Flury discontinued the Chlor-trimeton and, instead, prescribed Benadryl to start that day, May 20, 2013, and to stop on August 20, 2013. Ottey Decl. ¶ 7. He also wrote a thirty-day prescription for Naproxen[7] to start on May 20, 2013, and stop on June 20, 2013. *Id.*; Medical Records 83.

On June 10, 2013, Blankumsee submitted a sick call slip complaining that his hand and knee hurt "to the point where [he] could not eat or walk." Medical Records 46. He also reported the naproxen he was using was not working. *Id.*

On June 12, 2013, Blankumsee was seen by Carla Buck, R.N. Blankumsee reported pain in his left hand and dry skin. Medical Records 12–13; Ottey Decl. ¶ 8. The medical notes indicate the hand was not swollen or deformed and there was full range of motion. Medical Records 12–13; Ottey Decl. ¶ 8. Blankumsee was instructed to continue taking Naprosyn and

---

[6] The Medical Defendants explain rhinorrhea is the medical term for the production of nasal mucus. Medical Defs.' Mem. 10, ECF No. 12.

[7] Prescription naproxen is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). *See Naproxen*, MedlinePlus: Trusted Health Information for You, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681029.html (last visited July 24, 2014).

return to the medical unit if there was no improvement. Medical Records 12–13; Ottey Decl. ¶ 8. On June 21, 2013, Blankumsee was prescribed an additional thirty-day supply of naproxen to keep on his person. Medical Records 85.

On July 22, 2013, Blankumsee submitted a sick call slip complaining that his arthritis medication did not work and asking to renew his allergy medication. Medical Records 50. In response, he was seen on July 24, 2013 by William Beeman, R.N. Medical Records 15–17; Ottey Decl. ¶ 9. Blankumsee reported hand and knee pain and stated that he felt pain and numbness when he moved. Medical Records 15; Otey Decl. ¶ 9. Examination revealed Blankumsee's gait and range of motion were normal, and he was advised to apply heat to affected areas, to continue his current treatment regimen, and to return to the medical unit if his symptoms worsened. Medical Records 17; Ottey Decl. ¶ 9. Blankumsee did not express allergy concerns at this medical visit. Medical Records 15–17; Ottey Decl. ¶ 9.

On August 13, 2013, Blankumsee submitted a sick call slip complaining that he could barely stand, eat or write due to pain in his right hand and knee. Medical Records 50. He wrote the doctor had seen him more than a week before and was supposed to place him on pain medication, but none was received. *Id.*

On August 16, 2013, Monica Wilt, R.N. examined Blankumsee for complaints of right hand and left knee pain. Medical Records 18–20. At that time, Blankumsee rated his pain as 6 out of 10. *Id.*[8] Blankumsee was given a thirty-day supply of Motrin to keep on his person to self-administer. *Id.* He also was advised to apply alternating warm and cold compresses to the affected areas and to return if his symptoms did not improve or worsened. *Id.* at 20. Blankumsee did not request renewal of his allergy medications. *Id.* at 18–20; Ottey Decl. ¶ 10.

---

[8] Although neither party specifically explains the pain scale it appears the scale measures self-reported pain with 10 the highest level and zero or one the lowest level. *See infra* at 6.

On August 17, 2017, Blankumsee submitted a sick call slip stating that the arthritis in his hand and knee was worse and that he was being denied proper medical care as a result of "deliberate indifference and medical negligence." Medical Records 51. He added "I need something for this pain." He did not mention allergies or renewing his allergy medication. *Id.*

On August 19, 2013, Blankumsee submitted a sick call slip to renew his allergy medication. *Id.* at 52. He wrote '[t]his is the seventh (7th) sick-call request I've submitted regarding this issue- I need my allergy medication renewed (Benedryl)." *Id.*

On August 20, 2014, William Beeman, R.N. saw Blankumsee for knee and hand pain. Medical Records 21–24. Blankumsee reported the pain 8 out of 10 on the pain scale and requested a refill of his allergy medication. *Id.* at 23. Blankumsee showed no allergy symptoms such as nasal drainage, watery or swollen eyes, or inflamed ears or throat. *Id.* at 21–24; Ottey Decl. ¶ 11. Beeman concluded Blankumsee was in no apparent distress. Medical Records 22. Dr. Ottey states in his declaration, "[a]t that time, because there appeared no clinical need for renewal of Plaintiff's Benadryl prescription, Plaintiff was instructed to submit a sick call slip if his condition changed." Ottey Decl. ¶ 11.

In reference to Blankumsee's concerns of knee and hand pain, Beeman noted that Blankumsee was observed jumping out of his bunk and walking to his cell door with a normal gait. Medical Records 23. Since examination revealed no tenderness or swelling, no pain on movement, intact sensation, and normal range of motion, Beeman recommended that Blankumsee continue his current pain treatment plan. *See* Medical Records 24.

On August 27, 2013, Blankumsee submitted two sick call slips complaining that he had been without his allergy medication since August 20, 2013. Medical Records 54–55. He stated "[n]ow, I cannot breathe, or sleep, please renew my medication." *Id.* at 54. In regard to his right

7

hand and left knee pain, he stated that the "nurse took all my medication back-saying he'd prescribe me something stronger- I still haven't received anything since the 20th." *Id.* at 55.

On August 30, 2013, Lisa Shell, R.N. saw Blankumsee for pain and tingling in his right arm and left knee. When asked to close his hand to make a fist, Blankumsee appeared unable to do so. Medical Records 25. He also expressed concern that his allergy medicine had expired. *Id.* Shell contacted Greg Flury, who issued thirty-day prescriptions for Benadryl and Indomethacin.[9] *Id.* Blankumsee was administered Benadryl that same day. *Id.* at 90.

On September 19, 2013, Flury saw Blankumsee in response to a September 12, 2013, sick call slip, in which Blankumsee had complained Indomethcin was providing ineffective pain relief for his arthritis. Medical Records 28–34, 56. Examination showed Blankumsee's gait and musculature were normal, and there was no skeletal tenderness or joint deformity. *Id.* at 28. Flury ordered a chemistry panel and blood count, discontinued the Indomethacin, prescribed Tegretol and Mobic,[10] and instructed Blankumsee to return in six weeks for reevaluation. *Id.* at 28–29.

---

[9] Indomethacin is used to relieve moderate to severe pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints), and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). See *Indomethacin*, MedlinePlus: Trusted Health Information for You, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a681027.html (last visited July 24, 2014).

[10] Tegretol is the brand name for carbamazepine, a drug which is used alone or in combination with other medications to control certain types of seizures in patients with epilepsy. It is also used to treat trigeminal neuralgia (a condition that causes facial nerve pain). See *Carbamazepine*, MedlinePlus: Trusted Health Information for You, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a682237.html (last visited July 24, 2014). Mobic, the brand name for meloxicam, is used to relieve pain, tenderness, swelling, and stiffness caused by osteoarthritis (arthritis caused by a breakdown of the lining of the joints) and rheumatoid arthritis (arthritis caused by swelling of the lining of the joints). See *Meloxicam*, MedlinePlus: Trusted Health Information for You, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a601242.html (last visited July 24, 2014).

On October 1, 2013, Kristi Cortez, R.N. evaluated Blankumsee, who complained the Mobic was causing him mental imbalance, dizziness, and speech and vision disturbances. Medical Records 35–36. The medical notes from the visit state that Blankumsee was alert and oriented with normal vital signs. *Id.* He was instructed to submit another sick call slip if his complaints did not subside. *See id.*

On October 9, 2013, Ava Joubert, M.D. met with Blankumsee, who requested pain medication and renewal of his Benadryl. *Id.* at 37. The record from that appointment reads "provider asked pt several times 'where is the pain' he had NO direct answer...tegretol and meloxaca are current." *Id.* Dr. Joubert renewed Blankumsee's Benadryl prescription and made no changes to Blankumsee's pain medication regimen. Ottey Decl. ¶ 15

On November 5, 2013, Blankumsee was seen by Dr. Ottey for follow-up of his complaints of joint pain. Ottey ¶ 16. Blankumsee reported that he had been getting some relief with the medication prescribed for him, *id.* and he reported no numbness or tingling, Medical Records 39. After physical examination, Blankumsee's medication plan was continued. Ottey Decl. ¶ 16.

### C. PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Blankumsee attests in support of his Motion for Summary Judgment and Answer to Warden Shearin's dispositive motion that Shearin is not protected by the doctrine of qualified immunity. Pl.'s Mot. for Summ. J., ECF No. 20. It is unclear why Blankumsee addresses qualified immunity or why it is relevant here, as Warden Shearin does not raise the defense. *See* Shearin Mot. to Dismiss.

Next, Blankumsee counters that he did in fact bring his allergy and hand and knee pain complaints as well as delays in receiving responses to his requests to medical providers for

9

treatment, to Shearin's attention in an ARP dated May 20, 2013. ARP, Pl.'s Mot. for Summ. J. Ex. A., ECF No. 20-1. On June 10, 2013, Shearin answered the ARP, stating:

> [I]nvestigation has revealed that you have received ongoing treatment and prescribed medicine from what you reported to be allergies, rashes, and an allergic reaction to Vaseline. You do not have a medical diagnosis for a skin condition therefore you cannot be prescribed lotion.

*Id.*[11] Blankumsee appears to conclude based on this response that Shearin interfered with doctor-ordered treatment. Pl.'s Mot. for Summ. J. 3. He generally attributes this to "medical staff other than licensed doctors interfering and prescribing plaintiff medicine" and "policy deficiencies in staffing and procedures." *Id.* at 4.

Blankumsee also submitted the declaration of his cellmate Gerald Sears. Sears Decl., ECF No. 25. Sears attests that he saw Blankumsee go without medical attention for up to ten days in August of 2013 for pain in the left knee and right hand. *Id.* Sears declares he witnessed Blankumsee suffer loss of breath, hearing, and vision as a result of allergies and that he cleaned mucus from Blankumsee's eyes and held a bag to his mouth so that he could breathe. *Id.* Sears also states that he filled out sick call slips for Blankumsee. *Id.*

### D. ADDITIONAL PENDING MOTIONS

Several additional motions have been filed in recent weeks. On June 3, 2014, the Medical Defendants filed a Motion for Protective Order, ECF No. 27, asserting that Blankumsee had promulgated discovery requests prior to the issuance of a scheduling order, *id.* ¶ 4. Blankumsee has filed a corresponding Motion for an Order Compelling Discovery, ECF No. 28, stating that he has received no response to his discovery requests, *id.* On July 28, 2014, the Court received and docketed Blankumsee's second Motion for Appointment of Counsel, ECF

---

[11] Shearin's response did not address Blankumsee's concerns regarding allergy medication renewal, arthritis pain, and delays by medical providers in responding to his sick call slips.

No. 29, and a Motion for Leave to File Amended Complaint, ECF No. 30.

## II. STANDARD OF REVIEW

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). When considering cross-motions for summary judgment, the court must consider each motion individually and view "the facts relevant to each . . . in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986). Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.* at 252.

The Court recognizes that Plaintiff is proceeding *pro se* and his complaint is to be construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, liberal construction does not absolve Plaintiff from pleading a plausible claim. *See Holsey v. Collins*, 90 F.R.D. 122, 128 (D.Md. 1981) (citing *Inmates v. Owens*, 561 F.2d 560, 562–63 (4th Cir. 1977)).

## III. DISCUSSION

Blankumsee claims defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. As a threshold consideration, the claim against Warden Shearin fails to show any personal involvement in Blankumsee's medical care.

11

### A. Shearin's Supervisory Liability

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "'affirmatively show[] that the official charged acted personally in the deprivation of the plaintiff's rights.'" *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). The doctrine of *respondeat superior* generally is inapplicable to § 1983 actions. *See Love–Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no *respondeat superior* liability under § 1983); *Vinnedge*, 550 F.2d at 927–99; *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Thus, Blankumsee must demonstrate that a defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation in order to establish liability under § 1983. *Id.* Blankumsee, however, does not allege any personal involvement by Shearin in the incidents presented in his complaint.

Liability of supervisory officials is not based on ordinary principles of re*spondeat superior*, but rather is premised on "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir.2001) (citing *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Section 1983 liability on the part of a supervisor requires a showing that: 1) the supervisory defendant failed to provide an inmate with needed medical care promptly, 2) the supervisory defendant deliberately interfered with the medical provider's performance, or 3) the supervisory defendant tacitly authorized or was indifferent to the medical provider's constitutional violations. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990); *see also Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984). Blankumsee seeks to hold Shearin responsible for his alleged lack of medical care solely because Shearin was Warden of the institution and reviewed his ARP complaining about medical care.

This is the very essence of the doctrine of *respondeat superior*, which is inapplicable in § 1983 litigation. Shearin's general administrative responsibilities are insufficient to confer supervisory culpability.

### B. Eighth Amendment

As interpreted by the Supreme Court, the Eighth Amendment prohibits "unnecessary and wanton infliction of pain." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003). In the context of denial of medical care, an Eighth Amendment violation arises when the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center,* 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844.

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does

not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones,* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge requirement is not met. *Id.* at 169 (reasoning that actions inconsistent with an effort to hide a serious medical condition refute the presence of subjective knowledge). Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer,* 528 F. 2d 318, 319 (4th Cir. 1975) (concluding that, where a prisoner was under constant medical supervision, his claims did not rise to the level of deliberate indifference).

### 1. Warden Shearin

There is no indication that Shearin directly was responsible for any constitutional violations. As a nonmedical correctional supervisor, Shearin was entitled to rely on the medical judgment and expertise of prison physicians and medical staff concerning the course of treatment necessary for inmates. *See Shakka v. Smith,* 71 F.3d 162, 167 (4th Cir. 1995); *Miltier v. Beorn,* 896 F.2d 848, 854–55 (4th Cir. 1990) (stating supervisory prison officials are entitled to rely on professional judgment of trained medical personnel and may be found to have been deliberately indifferent by intentionally interfering with an inmate's medical treatment ordered by such personnel).

Contrary to Blankumsee's contentions, Shearin's June 10, 2013, ARP response does not show interference with medical care. Rather, it demonstrates that Shearin, a nonmedical supervisor, appropriately relayed the concerns in the ARP for investigation to appropriate medical providers. Shearin's subsequent answer was predicated on that investigation and was a reasonable response. And to the extent that Blankumsee's response does not address every issue raised in Blankumsee's ARP, the response does not show that Shearin was aware that he was so

doing, and there is no indication that Blankumsee attempted to follow up regarding those issues. In short, Blankumsee provides no evidence that Shearin hindered his medical care or otherwise acted with deliberate indifference to his medical needs. For these reasons, Shearin is entitled to summary judgment in his favor as a matter of law.

### 2. Medical Defendants

Blankumsee does not dispute the contents of his medical records, and they demonstrate that he has been seen regularly for his arthritis and allergy concerns. Blankumsee's allergic reactions, as well as hand and knee pain, undoubtedly have been uncomfortable. Whether they amounted to objectively serious medical needs, especially in light of the brief, ten-day period that Blankumsee allegedly went without Benadryl, is not shown. Assuming, arguendo, that these conditions did amount to serious medical needs, the uncontroverted records show that he was prescribed various medications for pain relief and to manage his seasonal allergies. When Blankumsee indicated that a medication was not effective, medical providers have indicated that they prescribed other medicines instead or instructed him to return to the medical unit if the symptoms did not improve or worsened. Blankumsee provides no facts to substantiate his otherwise conclusory claims that Defendants acted with requisite deliberate indifference to his serious medical needs or that they did so with in concert with Warden Shearin. When viewed in the light most favorable to Blankumsee, his allegations evidence disagreement with health providers over the course of his treatment, not deliberate indifference to his serious health needs. Though Blankumsee may take issue with Nurse Beeman's August 19, 2013, decision not to renew the Benadryl prescription and to continue his joint pain treatment regimen, at that time Blankumsee showed no allergic symptoms and was observed jumping out of his bunk and walking with a normal gait. *See supra.* Blankumsee's disagreement with the nurse's assessment

of his complaints is insufficient to show deliberate indifference.

Blankumsee submitted sick call slips on August 27, 2013, and he was seen by a medical provider three days later, at which time his Benadryl was renewed and Indomethacin was prescribed. Crediting as true Blankumsee's assertion that he went for ten days without receiving Benedryl and experienced great discomfort as a result of his allergies and arthritic pain, he fails to show Defendants intentionally delayed in providing him medical care. Accordingly, the Medical Defendants are entitled to summary judgment as a matter of law.[12]

### C. ADDITIONAL PENDING MOTIONS

The grant of summary judgment in this case obviates the need for discovery, and therefore both the Medical Defendants' Motion for Protective Order and Blankumsee's Motion for an Order to Compel Discovery are moot.

With respect to Blankumsee's motion to appoint counsel, this is his second such motion, the first of which I denied by an order dated May 16, 2014. Order, ECF No. 24. As I noted in that Order, "'Counsel should be appointed in civil cases only under "exceptional circumstances," the existence of which 'turns on the complexity of a party's claims and his ability to present them.'" *Id.* at 1 (quoting *Goodman v. Johnson*, 524 F. App'x 887, 891 (4th Cir. 2013)). As before, I do not find that this case presents any exceptional circumstances that would justify the appointment of counsel. *Id.* And notwithstanding his lack of legal training, Blankumsee ably has stated the facts underlying his claims so as to create a clear record for summary judgment. Accordingly, the motion to appoint counsel will be denied.

Finally, with respect to Blankumsee's motion to amend, the decision whether to grant

---

[12] The Medical Defendants' July 3, 2014 Motion for Protective Order from discovery pending disposition of their Motion for Summary Judgment (ECF No. 27) and Blankumsee's July 14, 2014, Motion to Compel Discovery (ECF No. 28) will be dismissed as moot.

such a motion is within this Court's discretion. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Pursuant to Rule 15(a)(2), "[t]he court should freely give leave [to amend] when justice so requires." The Court only should deny leave to amend if amendment "would prejudice the opposing party, reward bad faith on the part of the moving party, or . . . amount to futility," *MTB Servs., Inc. v. Tuckman-Barbee Constr. Co.*, No. RDB-12-2109, 2013 WL 1819944, at *3 (D. Md. Apr. 30, 2013); *see Foman*, 371 U.S. at 182 (stating that the court also may deny leave if the plaintiff has amended more than once already without curing the deficiencies in the complaint); *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). Here, Blankumsee seeks to amend his complaint to name certain defendants whose identities were not known to him earlier and to clarify a particular medication that he was prescribed. *See* Pl.'s Mot. to Am. Because neither of these additions would allow Blankumsee to survive summary judgment, amendment would be futile and the motion to amend will be denied.

## IV. CONCLUSION

There is no disputed material fact on which Blankumsee could persuade a jury to find that the Defendants' conduct demonstrated deliberate indifference to his serious medical needs. For the reasons set forth above, Defendants' Motions for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment will be denied. The Medical Defendants' Motion for Protective Order and Plaintiff's Motion for an Order Compelling Discovery will be denied as moot. Plaintiff's Motion for Appointment of Counsel and Plaintiff's Motion for Leave to File Amended Complaint will be denied. A separate Order follows.

8/4/14
Date

Paul W. Grimm
United States District Judge